UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

BRANDY BRAYTON WHEELER,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

───────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

08-CV-236
(GLS/VEB)

## I. INTRODUCTION

In 2005, Plaintiff Brandy Brayton Wheeler filed an application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since June 26, 2004, primarily due to diabetes, obesity, depression and personality disorder. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorney, Stephen J. Mastaitis, Jr., Esq., commenced this action on February 28, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g).

On March 19, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

Plaintiff applied for SSDI and SSI on January 3, 2005, alleging that she had been unable to work since June 26, 2004. (T[1] at 17).  The claims were denied on August 1, 2005. (T at 17, 30-32).  Plaintiff filed a request for a hearing on September 26, 2005. (T at 17, 37). On January 11, 2007, a hearing was held in Glens Falls, New York before Administrative Law Judge ("ALJ") Carl Stephan. (T at 334).  Plaintiff, represented by counsel, appeared and testified.  (T at 17, 334).

On February 12, 2007, ALJ Stephan issued a written decision denying Plaintiff's application for benefits.  (T at 17-27).  The ALJ's decision became the Commissioner's final decision on February 1, 2008, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff commenced this action on February 28, 2008. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on December 11, 2008. (Docket No.15).  The Commissioner filed a Brief in opposition on January 26, 2009. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

## III. DISCUSSION

A.    **Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.5)

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof with respect to the fifth and final step. See Bowen,

---

[3]This five-step process is detailed below:
First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 26, 2004, the alleged disability onset date.  (T at 19).  The ALJ found that Plaintiff has the following "severe" impairments: diabetes, obesity, depression and personality disorder. (T at 19).  However, the ALJ concluded that Plaintiff's impairments did not meet or equal the level of severity of any disabling condition set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.  (T at 22).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work activity, provided that it is "simple and unskilled, involves a minimal amount of stress, takes in to account occasional difficulties with maintaining attention and concentration and does not require the completion of detailed or complex tasks."  (T at 22).  The ALJ found that Plaintiff retained the residual functional capacity to sit, stand and walk for six (6) hours in an eight (8) hour workday and lift ten (10) pounds frequently and twenty (20) pounds occasionally. (T at 22-23).

5

The ALJ found that Plaintiff is a "younger individual" as a result of the fact that she was born on August 21, 1985 and was eighteen (18) years old at the time of the alleged onset of her disability.  (T at 26).  The ALJ found that transferability of job skills was irrelevant because Plaintiff has no past relevant work.  (T at 26).  The ALJ determined that, given Plaintiff's residual functional capacity, age, and educational background (high school education), she can perform jobs that exist in significant numbers in the national economy. (T at 26).  Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act.  (T at 27).  As noted above, the ALJ's decision became the Commissioner's final decision on February 1, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of her position.  First, she argues that she meets or equals or has a combination of disabling listed impairments.  Second, Plaintiff contends that the ALJ failed to properly determine her residual functional capacity.  Third and finally, she asserts that the Appeals Council failed to properly consider new medical evidence.  This Court will address each argument in turn.

**a.      Disabling Impairments**

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and

the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff contends that her impairments meet or medically equal the criteria of Listings §§ 9.08 (Diabetes mellitus) and 12.04 (Affective Disorders).

### i.      Diabetes Mellitus

To meet the requirements of Listing §9.08, the claimant must have a diagnosis of diabetes mellitus with at least one of the following: (1) "Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station;" (2) "Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests;" or (3) "Retinitis proliferans."

In this case, Plaintiff concedes that the record does not support an argument that she satisfies the criteria for Listing § 9.08.  (Docket No. 15, at p. 8)  However, Plaintiff contends that her record of disabling symptoms supports a finding a medical equivalence to the Listing.

In support of this argument, Plaintiff points to medical records describing her diabetes as "not under control" (T at 168) and "poorly controlled." (T at 171).  In addition, the records indicated that Plaintiff's blood glucose test results were frequently outside of the target range established by her treating endocrinologist, Dr. Christine Alexander-Decker.  A diabetic rash was noted on Plaintiff's right leg. (T at 223).

Plaintiff testified that her diabetes affects her "ability to walk for periods of time, long periods of time and stand for periods of time and sit for periods of time ." (T at 340-41).  She explained that her legs and feet are swollen and that she sometimes experiences

7

numbness. (T at 341).  Plaintiff testified that she had difficulty keeping jobs because, among other things, she was required to make frequent trips to the restroom due to her diabetes. (T at 348, 352).  Plaintiff further explained that blood sugar fluctuations cause her to experience dizziness, shaking, and disorientation. (T at 349, 351).

Where, as here, the claimant does not satisfy the specific criteria of the Listing, the regulations require the ALJ to determine whether the claimant's impairment is medically equivalent to a listed impairment. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(H)(4). To demonstrate medical equivalence, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).  In other words, to "medically equal" a listed impairment,"the medical findings [must be] at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926(a), (b).

"Where an individual has a combination of impairments, none of which meets or equals a listed impairment, and each impairment is manifested by a set of symptoms and relevant signs and/or abnormal laboratory findings, the collective medical findings of the combined impairments must be matched to the specific set of symptoms, signs, and laboratory findings of the listed impairment to which they can be most closely related. The mere accumulation of a number of impairments will not establish medical equivalency. In no case are symptoms alone a sufficient basis for establishing the presence of a physical or mental impairment."  Social Security Ruling ("SSR") 86-8.

The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings.  (T at 22).   This decision was supported by substantial evidence.  Although Plaintiff's diabetes has been poorly

8

controlled, there is no indication that she suffered from acidosis or retinis proliferans. Indeed, with regard to vision, Plaintiff was examined by Dr. David Westfall, an ophthalmologist, who noted that she shows "no signs of diabetic retinopathy." (T at 236). Although she complained of neuropathy (T at 219), there is no indication that it caused significant and persistent disorganization of motor function. Clinical examination records noted that Plaintiff's gait, station, and motor functions were essentially normal. (T at 171, 304). Dr. Alexander-Decker indicated that Plaintiff was more limited by her cognitive capacity than her diabetes with regard to her ability to perform work. (T at 224).

Further, the ALJ noted that Plaintiff frequently failed to comply with the recommended course of treatment. Plaintiff's condition showed improvement when she followed the insulin regimen prescribed by her endocrinologist (T at 223, 216). However, she declined a recommended diabetes self-management course (T at 231), continued smoking despite repeated warnings that she should stop (T at 231, 224), and was reluctant to follow treatments recommended by her treating endocrinologist  (T at 224, 220). According to January 2005 psychiatric evaluation completed by Lydea Adler, a nurse practitioner, Plaintiff did not follow a diabetic diet or test her blood sugar and indicated that she was "not interested" in gaining control of her diabetes. (T at 155-56).

Pursuant to 20 C.F.R. § 416.930, non-compliance with prescribed medical treatment can be a basis for denial of benefits. See Feliciano v. Barnhart, No. 01 CV 5099, 2002 WL 32096586, at *3 (E.D.N.Y. July 1, 2002)("The SSA Regulations provide that a claimant who fails to follow prescribed medical treatment which would restore her ability to work is typically ineligible for SSI benefits.") (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) ("a remediable impairment is not disabling")).

In light of the foregoing, this Court finds that the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal § 9.08 of the Listings was supported by substantial evidence.

### ii.    Depression/Mental Impairments

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, Plaintiff contends that her mental impairments meet or medically equal the criteria for the impairment contained in § 12.04 of the Listings (Affective Disorders). To establish that his impairments meet or equal § 12.04, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically

involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Plaintiff clearly satisfies the Subsection (A) criteria under § 12.04 because the clinical records document persistent depressive symptoms characterized by sleep disturbance, and decreased energy (T at 149, 153, 156-57). Dr. Paul D. Etu, a consultative psychologist, noted that Plaintiff showed "virtually every symptom related to a major depressive disorder with the exception of recurrent thoughts of suicide." (T at 209). Dr. Etu also noted that Plaintiff likely suffered from post-traumatic stress disorder related to past physical, sexual and emotional abuse; bi-polar disorder; panic disorder without agoraphobia; and cannabis abuse. (T at 211).

Thus, the key inquiry is the effect Plaintiff's impairments have with regard to the Subsection (B) criteria. Plaintiff will only be disabled if her impairments are so marked in at least two of the specified areas that they preclude her from performing basic work activities. See Armstrong v. Comm 'r of Social Sec., No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must

exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

With regard to Plaintiff's activities of daily living, the records indicate that, as of a May 2005 psychiatric consultative examination conducted by Dr. David Funari, Plaintiff attended church regularly, worked part-time at a supermarket, and managed her personal needs. (T at 166-68). A physical consultative examination was conducted in July 2005 by Dr. Michael Holland, who noted that Plaintiff enjoyed horseback riding and golf. (T at 171). Plaintiff testified that she performed household chores such as laundry, dishes, and grocery shopping and even performed more rigorous tasks such as snowblowing, raking, lawn mowing, and gardening. (T at 223, 343-45). She worked on her mother-in-law's farm (T at 216, 223, 232) and cared for animals on the farm. (T at 344, 338). Dr. Iport, the State Agency physician, conducted a review of Plaintiff's medical and psychiatric records and concluded that she had no limitations with regard to her activities of daily living. (T at 190). In sum, as the ALJ concluded (T at 21), there is no indication that Plaintiff suffered from any measurable limitation with regard to her activities of daily living.

"Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." Bergman v. Sullivan, CIV 88-513L, 1989 WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989). Dr. Funari indicated that Plaintiff "got along with co-workers and supervisors" and described Plaintiff's social life as "fair." (T at 167-68). She reported some difficulties in her relationship with her parents, but indicated that she spent time with friends, which improved her mood. (T at 153). Plaintiff indicated that she enjoyed going out with friends and talking on the telephone, but that she would occasionally "lash out" at people involuntarily. (T at 106). At the time of the hearing before the ALJ,

Plaintiff testified that she was married and lived with her husband (T at 337), although the medical records document marital difficulties.  Dr. Iport concluded that Plaintiff had mild difficulties with regard to social functioning. (T at 190).   The foregoing constitutes substantial evidence in support of the ALJ's conclusion that Plaintiff suffered from only mild difficulties in maintaining social functioning.

With respect to Plaintiff's ability to maintain concentration, persistence, or pace, the ALJ found that Plaintiff had only "moderate" limitations.  (T at 21).  This determination was likewise supported by substantial evidence.   Plaintiff indicated that she did not have problems paying attention or remembering, could follow directions, and would finish what she started. (T at 108-109).   Dr. Funari reported that Plaintiff denied problems with concentration and could accurately repeat five digits forward, remember three of three objects in five minutes, and perform forward serial counting without error. (T at 167). Plaintiff did have difficulty repeating six digits forward and performing reverse serial counting. (T at 167).   She was able to do basic addition and subtraction without pencil and paper, but demonstrated "impaired" insight. (T at 168).

Dr. Iport opined that Plaintiff had "moderate" difficulties with respect to her ability to maintain concentration, persistence, or pace, and particularly noted that she was not significantly limited in terms of carrying out instructions, maintaining attention and concentrating for extended periods, making simple work-related decisions, or sustaining an ordinary routine without special supervision. (T at 194).  However, Dr. Iport concluded that Plaintiff was moderately limited in terms of her ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms, respond appropriately to changes in the work setting, and set realistic goals or make plans

13

independently of others. (T at 195).

In light of the foregoing, the Court has little difficulty concluding that substantial evidence supports the ALJ's determination that Plaintiff's limitations with respect to maintaining concentration, persistence, or pace are moderate.  It is also noted that the ALJ accounted for these limitations when determining that Plaintiff could perform light work that involved a minimal amount of stress, takes into account occasional difficulties with maintaining attention and concentration, and does not require the completion of detailed or complex tasks. (T at 22).

There are no medically documented episodes of decompensation, so that factor is not at issue.   Accordingly, the Court finds that the ALJ applied the appropriate legal standard and substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal § 12.04 of the Listings.

### iii.   Combination of Impairments/Obesity

Plaintiff also argues that even if her individual impairments do not satisfy the Listings, she is nevertheless disabled due to the cumulative effect of the combination of her diabetes, obesity, and mental impairments.  Plaintiff's conclusory statement in this regard is not supported by any particular arguments regarding the cumulative impact of her diabetes and mental impairments.  Rather, it appears that she simply wishes to re-state the claims discussed above regarding the severity of her impairments.  For the reasons outlined above, the ALJ's conclusions regarding the extent, nature, and severity of Plaintiff's impairments and the fact of her non-compliance with treatment protocols was supported by substantial evidence.

With regard to obesity, it has been noted that "[o]besity is not in and of itself a

disability; [h]owever, [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

In this case, the ALJ concluded that Plaintiff's obesity constituted a "severe" impairment (T at 19), but found that she did not have an impairment or combinations of impairments that meets or medically equals a Listing . (T at 22).  The evidence concerning Plaintiff's activities of daily living, as outlined above, was strongly suggestive that Plaintiff's obesity, either considered by itself or in conjunction with her physical impairments, was not disabling.  Plaintiff has offered no explanation or evidence in support of her claim that the combination of her obesity and mental impairments was disabling.

The Commissioner is not required to "make assumptions about the severity or functional effects or obesity combined with other impairments." SSR 02-1p.  "Obesity may or may not increase the severity or functional limitations of the other impairment" and the Commissioner's decision must be based upon "information in the case record."  SSR 02-1p. In this case, this Court finds no reversible error with respect to the ALJ's determination in this regard.

### b.    Residual Functional Capacity Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

Plaintiff argues that the ALJ erred by finding that she can performed the full range of light work.  In particular, Plaintiff notes her history of gastrointestinal symptoms, diabetic episodes, and mood disturbances.  Plaintiff further contends that the ALJ improperly discounted her testimony regarding the nature, extent, and severity of her disabling symptoms.

Plaintiff's argument is flawed in several respects.  First, the ALJ did not determine that Plaintiff could perform the full range of light work.  Rather, while the ALJ found that Plaintiff retained the RFC to perform the exertional requirements of light work, he concluded that her non-exertional impairments limited her to light work that involved a minimal amount of stress, takes into account occasional difficulties with maintaining attention and concentration, and does not require the completion of detailed or complex tasks. (T at 22). Second, Plaintiff's argument is based upon the contention that the ALJ improperly

16

discounted her testimony.  However, this Court finds that the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of her subjective complaints based on the objective medical and other evidence.

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a credibility determination:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other

17

symptoms;

7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds Plaintiff's contentions are not credible, he or she must state his or her reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, as outlined above, the medical evidence did not support Plaintiff's claims of disabling pain and diabetic symptoms.  Further, while both Dr. Funari and Dr. Iport noted that Plaintiff's mental impairments would impose some moderate non-exertional limitations, there is no support in the record for the suggestion that Plaintiff cannot perform the requirements of light work, subject to the restrictions noted by the ALJ.  Indeed, Dr. Funari noted that at the time of the consultative examination, Plaintiff was employed part-time, reported to work on time, and got along with supervisors and co-workers. (T at 168). Plaintiff's extensive activities of daily living, as outlined above, were also substantially inconsistent with a claim of disabling limitations.  Plaintiff's credibility was also undermined by contradictory statements concerning her use of alcohol and marijuana.  (T at 167, 208, 232, 354-55).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of

18

pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984)

(citations omitted). Further, the ALJ has the benefit of directly observing a claimant's

demeanor and other indicia of credibility, which thus entitles the ALJ's credibility

assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing

Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel,

177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ exercised his discretion to evaluate the credibility of

Plaintiff's testimony and rendered an independent judgment regarding the extent of

Plaintiff's subjective complaints based on the objective medical and other evidence. See

e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).

Likewise, the Court finds that the ALJ applied the appropriate legal standard and further

finds that substantial evidence supports the ALJ's RFC determination. The ALJ's decision

should therefore be upheld.

### c.    New Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the

period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see

also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council

"will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is [sic]

contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see §

416.1470(b).

Even if "the Appeals Council denies review after considering new evidence, the

[Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that

the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45.

19

Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

In this case, Plaintiff argues that the Appeals Council improperly ignored evidence of a sleep study conducted in September 2007, which indicated that Plaintiff suffered from severe sleep apnea. (T at 326-28). However, this evidence was clearly considered by the Appeals Council (T at 2-3) and this Court finds that the Appeals Council's action was in conformity with the applicable regulations. The Appeals Council is required to consider new evidence "only where it relates to the period on or before the date of the administrative law judge's hearing decision." 20 C.F.R. §§ 404.970 (b); 416.1470 (b). Here, the sleep study was conducted several months after the ALJ rendered his decision. Further, Plaintiff has offered no support for her assertion that the results of the sleep study even arguably undermine the fundamental findings of the ALJ with regard to her limitations and/or her ability to perform work.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating

sources, and afforded Plaintiff's subjective claims an appropriate weight when rendering

his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the

Court further finds that substantial evidence supports the ALJ's decision, it is respectfully

recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that

Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the

Commissioner be affirmed.

Respectfully submitted,

Dated:   August 24, 2009

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

21

Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on de novo review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 24, 2009

Victor E. Bianchini
United States Magistrate Judge

22